## LINCOLN L. McCANDLESS v. CARL DU ROI.

## No. 878.

### APPEAL FROM LAND COURT.

### HON. W. L. WHITNEY, JUDGE.

ARGUED OCTOBER 28, 1915.                    DECIDED NOVEMBER 26, 1915.

### ROBERTSON, C.J., WATSON AND QUARLES, JJ.

RECORDS—*decree of land court—construction—description of land.*

A surveyed description of land contained in a decree of the land court, if it requires construction, is subject to the same rules of construction as a description contained in an instrument *inter partes.*

BOUNDARIES—*questions of law and of fact.*

What is the boundary between certain lands is a question of law, but the location of that boundary upon the ground is a matter of fact.

SAME—*construction of description.*

The general rule that course and distance will yield to known. visible and definite objects whether natural or artificial will be applied when the description explicitly states that the object is the boundary.

SAME—*meander lines.*

Where a decree of the land court determined the boundary of land to be the bank of an auwai, the bank must be regarded as the true boundary, and not the meander points or lines which describe the sinuosities of the auwai.

APPEAL AND ERROR—*appeal from decree of land court.*

Under Sec. 3145, R. L. 1915, an appeal from a decree of the land court may be taken to the supreme court upon points of law only.

OPINION OF THE COURT BY ROBERTSON, C.J.

(Quarles, J., dissenting.)

The petitioner (appellant) and the contestant each owns a parcel of land situate on Liliha street in Honolulu. Their

lands adjoin on one side. In 1904, the land court, upon the petition of the present contestant, Du Roi, entered a decree confirming his title to his lot and brought the same under the operation of the land registration act (R. L. 1915, Ch. 178). In that decree the boundary between the lands of these parties was described as follows:

"5.   276° 10′ 56.1 feet along land described in L. C. Award 1127, Ap. 2, the south bank of the auwai being the boundary.

"6.   295° 15′ 35.6 feet along the south bank of the auwai.

"7.   265° 56′ 54.2 feet along the south bank of the auwai."

The initial point of the boundary thus described being the north-west corner of the contestant's lot. It is conceded that that decree conclusively determined the boundary between the two lands. That determination, clearly expressed in the decree, was that the boundary ran "along the south bank of the auwai." This was assumed by court and counsel to mean the edge of the bank. The petitioner, McCandless, in describing this boundary in his petition in the case at bar, followed the former decree except that, with a view to more definitely locate the edge of the south bank of the auwai, added certain offsets from straight lines run between the located points mentioned in that decree to the exact edge of the bank. That gave rise to this controversy as it developed a dispute as to the exact location of the auwai upon the ground at the time the former decree was made. It presented a question of fact which, upon conflicting evidence, was decided against the petitioner's contention. The land court held that the south bank of the auwai was in the same location in 1904 as at the time of the trial of this case; that the located points in the former decree were not exactly coincident with the edge of the auwai; and that in endeavoring to locate the edge of the auwai in the decree in this case it would be necessary to give offsets

at the located points as well as at the intermediate points as asked for in the petition. The contest, therefore, involves a narrow strip of land lying between what the petitioner contends was the line of the edge of the auwai at the time of the former decree, and its present makai edge, the contestant contending that the position of the bank has not been changed. The width of this strip varies from practically nothing to 1.7 feet. What is the boundary between certain lands is a question of law, but the location of that boundary upon the ground is a matter of fact. 5 Cyc. 969. *Smith* v. *Smith,* 110 Mass. 302, 304; *Whitehead* v. *Ragan,* 106 Mo. 231, 236; *Taylor* v. *Fomby,* 22 So. (Ala.) 910, 912; *Mitchell* v. *Williams,* 76 S. E. (Va.) 949. Here there can be no dispute as to the question of law, for, as above stated, the decree of 1904, in explicit terms, determined the "south bank of the auwai" to be the boundary. The disputed question of fact, namely, the location of the bank of the auwai, has been conclusively settled by the finding of the court below. The ground upon which the petitioner asks for a reversal of the decree in this case is, that in specifying offsets to define the exact edge of the auwai at the points located in the former decree, the present decree is inconsistent with, and, in effect, changes the former adjudication. There is no merit in the contention. The matter of locating the exact edge of the auwai by means of offsets was brought into the case by the description contained in the petition, and as the evidence disclosed the fact that the located points in the 1904 decree were not coincident with the edge of the auwai it became necessary in the decree in this case to specify those offsets. Under the decree in this case the boundary remains exactly where it was determined to be by the former decree, namely, "along the south bank of the auwai" as it then existed. The new decree, at the instigation of the petitioner himself, simply undertook to definitely locate the edge of the auwai

at certain points. The petitioner's grievance really is that the question of fact as to whether the location of the south bank of the auwai has been changed since 1904 was decided against him. But that question is not open for review upon this appeal. The statute allows appeals to be taken from decrees of the land court upon the facts to the circuit court and a jury, and allows appeals to be brought to this court "solely upon points of law." R. L. 1915, Sec. 3145.

A surveyed description of land contained in a decree of court, if it requires construction, is subject to the same rules of construction as a description contained in a patent, a deed, or other instrument *inter partes*. If the former decree be regarded as assuming that the four located points were at the edge of the auwai, and the fact be, as from the finding made by the land court we must take it to be, that the points specified in the boundary described in the former decree were in fact not coincident with the south edge of the auwai, then an ambiguity was shown which called for construction. In that event the rule would apply that "course and distance will yield to known visible and definite objects whether natural or artificial." 5 Cyc. 913, 921. This is unavoidable where, as here, it is clearly stated that the object, to wit, the bank of the auwai, is the boundary. In the case at bar an admitted ambiguity arises in the description of the point contained in the former decree with reference to the north-west corner of the Du Roi land. That corner is located in the decree in three ways, by course and distance and by reference to two objects, viz.: "190° 25′, 86.5 feet along L. C. Award 1127 * * * to east angle of wall at auwai." The undisputed evidence in this case showed that no two of those references were coincident. The point located by course and distance is a short distance north of the angle of the wall, and the edge or bank of the auwai is a short distance north of the located point. The double ambiguity in regard to that point must be resolved,

as the single ambiguity as to the other points is to be re-
solved, by giving controlling effect to the explicit statement
in the decree that the bank of the auwai is the boundary.
The decree in the present case, following the description in
the petition, avoids one of the ambiguities of the former
decree by omitting the reference to the angle of the wall.
That was perfectly proper, and by so doing the former de-
cree was no more impeached than it is by adhering to the
bank of the auwai at the other places at which the court
found the points located by course and distance were in
fact not coincident with the bank.  "Location of land is a
question of evidence and cannot be reduced to fixed and,
definite rules.  A correct location consists in the application
of any one or all of the rules of construction to the par-
ticular case; and when they lead to contrary results, that
must be adopted which is most consistent with the inten-
tion apparent on the face of the grant or conveyance, to
give effect to which the agreed on line therein described
may be corrected so as to correspond with the fact." 5 Cyc.
883.    The former decree was impotent to change the
physical facts as they existed on the ground.  Upon this
view of the case the court below properly held that the
points located by course and distance being not coincident
with the bank of the auwai must yield to the bank, which,
in the present decree, was particularly located by means of
offsets.

The same result is reached by approaching the matter
from another—and, we think, a more accurate—stand-
point.  The south bank of the auwai being irregular, the
located points given in the former decree are to be taken
as meander points merely and are not to be regarded as
points on the exact boundary.  Counsel for the appellant
admits, as he must, that the bank of the auwai is the
boundary *between* those points, and it logically and neces-

sarily follows that *at* those points also the bank is the boundary whether it be coincident with the located points or not. In other words, the straight lines from point to point, as shown on the plan attached to the description in the former case, were not intended to be, and are not claimed to be, boundary lines. They were mere meander lines. "In surveying land adjacent to a stream, whether navigable or not, lines are often run from one point to another along or near the bank or margin of the stream. * * * These are called meander lines, and they are not the boundaries of the tract, but they merely define the sinuosities of the stream which constitutes the boundary, and as a general rule, the mentioning in a deed or grant, of a meander line on the bank of a river as a boundary, will convey title as far as the shore unless a contrary intention is clearly apparent." 4 R. C. L. p. 97. See also 5 Cyc. 899; *Whitaker* v. *McBride,* 197 U. S. 510, 512; *Freeman* v. *Bellegarde,* 108 Cal. 179, 185; *Stonestreet* v. *Jacobs,* 118 Ky. 745, 749; *Tucker* v. *Mortenson,* 126 Minn. 214. In *Mitchell* v. *Smale,* 140 U. S. 406, 414, the supreme court said, "It has been decided again and again that the meander line is not a boundary, but that the body of water whose margin is meandered is the true boundary." And in 2 Devlin on Deeds (2nd ed.), Sec. 1026A, the author says, "The principle is so well established that it would serve no good purpose to elaborate it." A proper understanding of the object of the located points in the former decree shows that there is no real conflict in the description contained in the decree as between the bank of the auwai and the located points, and that the bank is the boundary throughout.

There being no error of law in the decree appealed from, it is affirmed.

*P. L. Weaver* for petitioner.

*R. B. Anderson* (*Frear, Prosser, Anderson & Marx* on the brief) for contestant.

### DISSENTING OPINION OF QUARLES, J.

Unable to concur in the majority opinion, although agreeing with much that is there said, it is my duty to set forth my reasons for dissenting. Not only did the land court and counsel for the respective parties treat the south bank of the auwai or ditch as the edge or point from which the ground begins to slope or fall to the water, but the evidence, without contradiction, shows the edge, as above defined, to be the bank of the auwai. The location of points 4, 5 and 6 in the boundary lines between the parties in the decree registering the boundary of the respondent Du Roi, made in 1904, fixes them at the south bank of the auwai and intermediate between said points as along the south bank of the auwai. The survey of the petitioner accompanying his petition shows that these points are not now at the edge of the south bank of the auwai but vary therefrom from six-tenths of a foot to 1.6 feet. The decree of 1904 is admitted to be *res adjudicata* and binding upon the parties. To my mind it irrevocably fixes the points in dispute as at the edge of the south bank by course and distance tied to two government survey stations, viz., Punchbowl and Rose Bank stations, by course and distance, so that should the auwai be completely obliterated and the monuments marking said points destroyed or removed the said fixed points could always be correctly and definitely located at their several points of location as fixed in the decree of 1904. The description in said decree of 1904 as along the south bank of the auwai means as it then existed. The effect of the decree of the land court in the present case, which the majority opinion affirms, is to move the boundaries between the parties from the places where located in the decree of 1904 in varying distances. This, to my view, disturbs the decree of 1904, unsettles it to a certain extent, contrary to the rule of law that said decree is binding on the parties to it and privies thereto.

If by decree, now made, the boundary line between the parties can be moved one foot, then it may by a later decree be moved ten or more feet, and the idea of permanency of title and boundary,—the basic principle upon which our land registration system, following the Torrens system, is founded,—is a delusion and a snare. The said points in dispute, being capable of exact location by course and distance at all times from the initial point of the respective surveys of the lands of the parties, should be by the language used in the decree of 1904 considered as fixed on the bank or edge of the auwai as it then (1904) existed. The auwai was erroneously treated by the land court in this case as a natural object, and that court held that the location of points 4, 5, 6 and 7, as shown by present survey, must give way to the call for the south bank of the auwai as given in the former decree. In that ruling the court, in my opinion, erred. The inherent error in the decree now appealed from is that it has, by evidence that is conflicting, overturned facts settled and adjudicated by the former decree, namely, that the said disputed points were at the date of that decree on or at the edge of the south bank of the auwai. As before suggested, if these points may be moved by movement of the ditch, either by process of erosion or of avulsion or by the hand of man, then they may be moved any number of feet, and, under the theory of the decree here reviewed, and of the majority opinion, the petitioner might in course of time lose all of his land. Such is not, in my humble opinion, the law, and the error being one of law, and not of fact, this court is not powerless to remedy such error, but ought to do so. The majority opinion is correct wherein it states that "what is the boundary between certain lands is a question of law, but the location of that boundary upon the land is a matter of fact." But the fact, in my view, was settled in the decree of 1904, and is now unsettled and changed in

Quarles, J., dissenting.

the case at bar by the decree of the land court affirmed·by the majority opinion. The boundary itself being a matter of law and its exact location upon the ground having been fixed and settled by the decree of a court having full jurisdiction, then, as matter of law, the location upon the ground of the boundaries is settled beyond controversy.

Ditches, roads, fences, marked lines on the ground and other work of man are not natural, but are artificial, objects which are not controlling when called for in surveys, deeds or other instruments, against courses and distances absolutely fixed by being tied to permanent objects such as the said government survey stations established for such purposes. The designation between natural objects and artificial ones is well stated in 4 R. C. L., at page 100, as follows: "Natural objects include mountains, lakes, rivers, creeks and rocks; while artificial objects and monuments consist of marked lines, stakes, roads and similar matters marked or placed on the ground by the hand of man." The boundaries, so far as they are in dispute, were settled in the decree of 1904 and cannot now legally be varied by changes in the ditch either by artificial or natural means. This is the rule in regard to natural streams. Where either the channel or bank of a natural stream is designated as the boundary of a tract of land any sudden, violent or visible change of the stream does not affect the boundary and it remains where it was. (*Collins* v. *State,* 3 Tex. App. 323; *Bouvier* v. *Stricklett,* 40 Neb. 792; *Degman* v. *Elliott* (Ky.), 8 S. W. 10; *Macdonald* v. *Morrill,* 154 Mass. 270; *Lynch* v. *Allen,* 20 N. C. 160; *St. Louis* v. *Rutz,* 138 U. S. 226; *Nebraska* v. *Iowa,* 143 U. S. 359). Such being the established rule with reference to visible changes in a natural stream, there is much more reason for applying the principle upon which the rule is based to a case where an artificial stream (a small ditch like the one in question here) has been changed by any means.

Points 4, 5, 6 and 7 are fixed points in the boundary

lines between the parties, and this is adjudicated by the decree of 1904. The boundary between those points designated, being the south bank of the auwai, more or less curved, easily changed by accident or design, should not control courses and distances by which the given fixed points were established in the decree of 1904. This ruling is in harmony with that followed in the case of *White* v. *Luning*, 93 U. S. 514, 525, where a fence was designated as a portion of a boundary but was ignored and a call for course and distance followed.

What is said in the majority opinion with reference to surveys of meanders of streams and rights of riparian owners upon streams and the citation of authority upon those points have no application here, in my opinion, but establish rules governing where natural streams, principally navigable lakes and rivers, such as Lake Michigan and the Platte River, constitute boundaries of a given tract of land. I cannot conceive that the meanders of a small artificial ditch, like that in question here, when fixed points along it are given as the beginning and ending of certain boundary lines of a tract of land bordering such ditch fixed by solemn decree, should now be ignored as is done in the majority opinion, and the south bank of the small ditch regarded as the boundary line, regardless of the fixed given points. In doing so the land court followed a rule adopted in regard to the public surveys of the United States lands bordering on natural streams and where the owners of such tracts own to the middle of the channel, consequently with a small tract of land they get an island out in the stream much larger in extent than the small tract of land acquired from the government. The survey in the present case shows that the fixed points in the decree of 1904, instead of being at the south edge or bank of the auwai, as they were in 1904, are now from one inch to 1.7 feet south of the south bank of the auwai as it now exists.

Syllabus.

This shows conclusively, to my mind, a change or movement of the south bank of the auwai, but by such change or movement the respondent should not be held to acquire more land than was adjudged to him in 1904, and the petitioner, as successor to Pahu, should not be adjudged to have lost anything that he then had.

In my opinion the decree appealed from should be reversed and the land court should be directed to treat points 4, 5, 6 and 7 as fixed points in the boundary line between the petitioner and respondent; and with directions to establish the boundaries intermediate the said points as they existed at the date of the decree of 1904.