## HANNAH W. KELEKOLIO *v.* ONOMEA SUGAR COMPANY, A CORPORATION.

### No. 1643.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT. HON. H. L. ROSS, JUDGE.

ARGUED APRIL 12, 1926.                    DECIDED MAY 3, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

BOUNDARIES—*province of court and jury.*

What is the boundary between certain lands is a question of law but the location of that boundary upon the ground is a question of fact to be determined by the jury upon proper instructions as to the rules governing the weight to be given to the various elements of the description.

Opinion of the Court.

SAME—*relative importance of conflicting elements of description.*

Ordinarily, courses and distances yield to natural monuments and the statement of the area is not deemed of great importance. The object always is to ascertain the intention of the parties as to the location and the extent of the land described in the instrument and if it appears in a given case that that intention will be best carried out by a departure from the ordinary rule and by giving more weight to courses and distances and some considerable weight to the statement of the area that may be done.

One natural monument may be required to yield to other irreconcilable natural monuments provided the latter are more definite and certain and susceptible of more exact location on the ground.

A call if clearly erroneous and manifestly contrary to the intention of the parties will yield to other calls consistent with the true intent.

In ascertaining the boundaries of a tract of land, one kind of natural objects called for is not, as a matter of law, entitled to more respect or to more importance than another. But as between several monuments which are incompatible with one another, that which is most certain and about which there is the least likelihood of mistake will prevail.

OPINION OF THE COURT BY PERRY, C. J.

This is an action of ejectment to recover a tract of land situate in the district of South Hilo and containing an area of 15.66 acres. The ultimate issue involved is one of boundaries. At the trial in the court below, at the conclusion of the evidence for the plaintiff, the court granted a motion by the defendant for a nonsuit. To that ruling the plaintiff excepted and the only question presented by the bill of exceptions is as to the correctness of the ruling.

It is well settled by repeated decisions of this court that if there is before the jury some substantial evidence, more than a mere scintilla, a verdict in conformity with the evidence cannot be set aside by this court, and that the determination of the issues cannot be withdrawn from the jury by an order of nonsuit if there is before the jury the same degree of evidence already referred to upon

which can be based a verdict in favor of the plaintiff. The question now before us is not whether upon the evidence adduced by the plaintiff a verdict for the defendant could stand but whether, regarding the aspects of the evidence most favorable to the plaintiff, a verdict for the plaintiff could be sustained. If the evidence adduced by the plaintiff was contradictory or susceptible of different inferences so that it was in law capable of supporting a verdict for the plaintiff even though also capable of supporting a verdict for the defendant a nonsuit could not properly be granted.

R. P. (grant) 2691 was issued to one Barenaba on January 23, 1860, containing the following description (translated from Hawaiian) of the land conveyed:

"This piece begins by a bamboo growth that was planted at the southwest corner of the land of Barenaba, and running

1:—N.  4 4/6° E.    9.18 Chains to the water in the Stream, being the Northwest corner of this piece, thence turning to the point of beginning and running

2:—S.  3 1/2° E.    2.41 Chains to the boundary of the land of Puumoi, thence along the land of Puumoi

3:—N. 80°      W.   7.08 Chains to the head of a Holua

4:—S. 87 1/4° W.   9.30 Chains " " Auwai (ditch)

5:—S. 85 5/8° W. 29.75 Chains along Auwai

6:—S. 82°      W.   6.38 Chains    "        "

7:—S. 64 1/4° W. 17.40 Chains    "        "

8:—S. 69°      W.   5.92 Chains    "        "

9:—N. 86 3/4° W.   9.22 Chains    "        "  to the East corner of the land of Barenaba at the stream; thence running along his Boundary

10 :—N.   8 3/4° W. 10   Chains to the stream of Ala-
kahi;
"Thence running along said stream to the Northeast
corner of this.
"Containing 91⅛ acres."

The plaintiff as the successor in interest of Barenaba
claims that the land described in the declaration is a part
of the land described in the patent.   The contention of
the defendant is that this claim of the plaintiff has not
been sustained by any evidence. The plaintiff produced at
the trial as witnesses two surveyors and three other per-
sons.   The evidence adduced clearly establishes, *prima
facie,* the initial point of the description contained in the
patent; the location of the first course, which runs N.
4 4/6° E. 9.18 chains to a stream; the location of the
stream along its entire length in so far as it constitutes
the northerly boundary of the land of Mokuoniki con-
veyed by the grant; the location of another stream, or
branch, running into the stream first referred to near
the mauka end of the land described in the patent; and
the location of the second course, which runs S. 3 1/2°
E. 2.41 chains to the boundary of the land of Puumoi,
and of the point which constitutes the end of that course.
It also shows that this last course adjoins the land
granted to Kalua by grant 2229.   The third course which
reads "N. 80° W. 7.08 chains to the head of a holua" is
claimed by the plaintiff to have been erroneously de-
scribed in the patent as a N. W. course and that it should
have been a S. W. course and upon this point so far as
the case has developed rests the main divergence between
the contentions of the parties.   The defendant contends
that no justification has been shown for regarding the
use of the letter N as a mistake or for the substitution
of the letter S and that from the end of the second course

the true boundary runs, precisely as written in the patent, N. 80° W.

"What is the boundary between certain lands is a question of law, but the location of that boundary upon the ground is a matter of fact." *McCandless* v. *Du Roi*, 23 Haw. 51, 53. Where the boundaries are is a matter of fact for the determination of the jury under proper instructions from the court concerning the relative weight of the different elements of the description. "In case of conflicting calls the true boundaries should be left to the jury under proper instructions as to the relative importance of conflicting calls." 9 C. J. 290. "In ascertaining the boundaries of a tract of land, one kind of natural objects called for is not, as matter of law, entitled to more respect or to more importance than another. But as between several monuments which are incompatible with one another that which is most certain and about which there is the least likelihood of mistake will prevail." *Ib.*, 216. "A call if clearly erroneous and manifestly contrary to the intention of the parties will yield to other calls consistent with the true intent." *Ib.*, 212. The rule also is, undoubtedly, that the call for natural monuments ordinarily prevails over the courses and distances and that the statement of the area is one of the least weighty of the elements of a description. All of these ordinary rules, however, relating to conflicts between areas, courses and distances and natural monuments and between two or more natural monuments, are susceptible of exceptions and need not be followed or may be reversed when under the circumstances and the evidence the contrary rule better serves to carry out the intention of the parties as to the location or extent of the land described in the instrument under consideration.

A holua is a slope; a place such as the ancient Hawaiians used for sliding and for other games; "a smooth

path on a side hill for sliding down." Andrews' Hawaiian Dictionary. In so far as the mere definition of the word is concerned it may be a narrow place suitable for sliding or it may be a broad place. In this case one of the surveyors called by the plaintiff testified that quite recently, in connection with his preparation for the trial of the present case, he had visited the locality and had there found a "gully," a "draw," a "swale," a "slope," a "holua," and that that gully, draw, swale, slope or holua "is there today;" that "it is not so well defined on the ground as it is on paper;" that "there is a slope there but there are—there is a slope in another place in other directions;" that he "made a location of the slope, indicating the head of the gully;" and that he "found it was so, that a well defined line or described line might be in any direction, that is, to the head of the gully from the point in the Mokuoniki gulch end of the first course." The witness made on the map (plaintiff's exhibit F) certain markings showing the location of the head of the slope or gully or holua as he had found it on the ground. These markings, denominated on the map "approx. top of gulley," pass through the two points severally contended for by the opposing parties herein as being the end of the course called for by the patent as running to the head of the holua.

While other answers and portions of answers given by this witness, as well as other evidence in the case, could be cited by the defendant as evidence supporting his claim as to the location of the true boundary between grant 2691 and the defendant's adjoining land called Puumoi (we assume throughout in the consideration of this case, without so deciding, that a verdict for the defendant would have been sustained by the evidence already adduced), nevertheless evidence which he did give could reasonably be understood by the jury as meaning, and

could reasonably support a finding, that the holua referred to in the patent was not very well defined at its upper limits, on the ground, and was such that any one of two or more separate points could well be regarded by a reasonable surveyor and by any other reasonable person as its "head." Under these circumstances it became a question of fact for the jury to determine the precise location of the head of the holua and if it believed from the evidence that it was at the point reached by changing the course from N. W. to S. W. it was competent for it to regard the inclusion of the letter N as a mistake and to substitute therefor the letter S.

But upon another ground also it would have been competent for the jury to reach the same conclusion. As above indicated, one natural monument (particularly an ill-defined one) can, in case of an irreconcilable conflict, be discarded by a jury when other monuments are referred to in the same description and found upon the ground which are more definite and certain. In R. P. 2691 courses 4, 5, 6, 7, 8 and 9 (course No. 3 being the one calling for the head of the holua) are described, the fourth as running to an auwai or ditch and the others as running along the auwai or ditch, the ninth in addition runs "to the east corner of the land of Barenaba at the stream" (referring to another parcel of land granted to Barenaba) and the tenth runs "thence along his boundary" a given course and distance "to the stream of Alakahi," being the first or main stream above referred to. While there was evidence to the contrary, there was ample evidence from which the jury could find that the ditch referred to in the patent was situated along a line about 80 to 100 feet south of the boundary contended for by the defendant,—from which the jury could find, in other words, that the ancient ditch was along the line claimed by the plaintiff in this action. So, also, there

was evidence from which the jury could find that to regard the point contended for by the defendant as the head of the holua and to run from thence on succeeding courses and distances would cause a material failure of the description to fit other natural monuments on the ground, to wit, a point in each of the two streams at the westerly or mauka end of the tract.    It is unnecessary, upon the present exceptions, to consider whether upon this state of the evidence the third course should as a matter of law be held to correctly read S. W. instead of N. W. for even if such a ruling is not required it is at least true that the evidence would amply justify the jury, under proper instructions, to find that the auwai was a definite, well-known monument and that the points in the two streams at the mauka end of the tract were likewise well-defined monuments, that the intention of the parties was to grant the land as far as the ditch and that the third course as written in the patent was an error to the extent already mentioned.

Under the contention of the defendant the area of grant 2691 would be only 72 or 73 acres while the patent calls for 91 1/8.    With the boundary lines placed as claimed by the plaintiff the area would be about 91 acres.    Ordinarily the call for a given area is not of great weight but under some circumstances it may be, as far as the law is concerned, of controlling influence.    It would be competent for the jury to give to the requirement of 91 1/8 acres a certain degree of weight as tending to emphasize the correctness of the view that the calls for the ditch were correct and reliable and that for the holua incorrect and unreliable or of the view that the call for the holua was entirely consistent with the calls for the ditch because the head of the holua was where the plaintiff claims it was and not where the defendant claims it was.

Still another element remains to be referred to.    The

description of the patent takes the second course "to the boundary of the land of Puumoi" and carries it "thence along the land of Puumoi" for its next seven courses. In other words the patent describes the granted land as adjoining the land of Puumoi and the latter is therefore a monument in the description of the former. It is true that at the date of the issuance of the patent the boundaries of the land of Puumoi had not been authoritatively described. The land had been awarded by name only and it was not until 1893 that its boundaries were settled by a commissioner appointed with authority in such cases; but the boundaries which the commissioner determined and declared were the boundaries of the land as they existed from ancient times, long prior to the date of the grant. The defendant correctly contends that it was not within the power of the commissioner of boundaries in settling the boundaries of Puumoi to alter the preexisting, surveyed boundaries of the adjoining land of Mokuoniki (grant 2691). The statute defining the power of the commissioner placed that limit upon his power. That statement of the law, however, does not settle the question of whether the commissioner in this instance did violate that rule or limitation. He purported in his decision (certificate No. 169) to place the northern boundary of Puumoi along the southern boundary of Mokuoniki. In defining the courses which correspond to courses 4, 5, 6, 7 and 8 of grant 2691 he described the boundary not only as running along the land of Barenaba but also as running along "an old trail," his exact expression being, "an old trail the boundary." There was evidence before the court that this old trail and the old ditch were not more than one foot distant from each other and in places crossed each other. Moreover the commissioner in describing the northerly boundary of Puumoi, coming down from mauka, described the S. W. corner of grant 2691 as

a "point in stream called Pohakunui." "Pohakunui" means a large rock and might well be considered by the jury a natural monument worthy of great weight when compared with an ill-defined head of a holua. It would have been competent for the jury to find that the northerly boundary of Puumoi, as declared by the commissioner, did not encroach upon the boundaries of Mokuoniki as defined in the patent but that on the contrary the two boundaries in fact coincided as by both documents, the patent and the certificate, they purport to do.

Again, it appears from the record that the commissioner of boundaries and Loebenstein, the surveyor whose surveyed description was incorporated in certificate No. 169, had before them in the making of the survey and the award of the judgment grant 2691, which included the call for the head of the holua. A witness who served as rodman for Loebenstein in the making of the actual survey of Puumoi testified that "the day that I came down there helping Loebenstein to survey that boundary line, Loebenstein came, surveying that land, down to the head of the holua. Q And that was the boundary between Puumoi and Mokuoniki along that part, was it not? A Yes, sir; the old auwai." In other words, this was evidence which the jury might well have regarded as confirmatory of the plaintiff's claim as to the location of the head of the holua, for the result of Loebenstein's work on the ground was incorporated in his description which was adopted by the commissioner as a part of the certificate or judgment. The north boundary of Puumoi as declared in the certificate runs through the point where the plaintiff claims the head of the holua was and through which, one of the surveyors testified, the summit of the slope or head of the holua runs today.

The patent contains a diagram of the land granted. That diagram with its markings that can be understood

as the designation of a gully or holua tends to support the defendant's contention that the third course is not erroneously stated in the patent as running N. W.; but maps or diagrams in patents or deeds, like other elements of the description, are to be weighed in comparison with the other elements in the description and other facts in the case. Whether such a diagram is to prevail over one. or more inconsistent elements or is to be deemed overcome by such other elements is a question to be determined by the jury under proper instructions from the court.

It is further contended on behalf of the defendant that there was no evidence that the defendant was in possession of the land sued for and that for this reason if for no other the nonsuit was properly granted. The plaintiff disclaimed as to a portion of the land described in the declaration. While the evidence of the defendant's possession of the remainder might have been clearer or more direct, nevertheless, we think that sufficient was adduced to justify the jury in finding that the defendant was in possession at the time the action was brought. The evidence made it clear that for a few years next preceding the commencement of this action the defendant was vigorously claiming that the boundary between the two lands was along the line leading mauka or westward from the point claimed by it at the trial as the head of the holua, in other words, that the defendant was claiming all of the land now in dispute as its land. One witness said: "They" (meaning the defendant) "were in possession of the land and there was a dispute as to the title, they said that we did not own 91 1/8 acres. It was a dispute of our right to a certain part of that land." There is also evidence that some Japanese laborers at some time shortly before the trial were seen building "a plantation road" in the strip in dispute and that the northerly edge of the

road was about three or four feet on the Puumoi side of the boundary as now claimed by the plaintiff. There is no evidence of any other plantation having land or interests in the vicinity in question and the "plantation road" referred to by the witness could well be understood by the jury to be a road of or for defendant which is a sugar plantation company. There is also evidence as to cane having been grown on the disputed strip, sufficient if unexplained to justify the inference that it was being there grown by the defendant. While there was some evidence from which the jury could have found that some of this cane was on one or two kuleanas and that those two kuleanas were within the disputed lines of boundary and therefore a part of the disputed strip, there was also evidence which would support a finding that the two kuleanas were south of the boundary as contended for by the plaintiff and that they were not therefore within the disputed strip. One of the witnesses testified that Loebenstein's line, which is the southerly boundary of Mokuoniki as claimed by the plaintiff, "divides my daughter's land" (one of the kuleanas in question) "with Mokuoniki." This testimony was given by the witness who accompanied Loebenstein as rodman in the survey of Puumoi. From this testimony the jury might properly find that this kuleana was not in Mokuoniki but was in Puumoi and the other kuleana from other evidence of the same witness had for its northerly line a continuation of the northerly line of the daughter's land. The same witness gave contradictory evidence on this subject but which of his statements was true or accurate was a question for the jury and not for the court.

The order granting a nonsuit is set aside and a new trial is granted.

*J. W. Russell* (*A. G. Correa* and *N. K. Lyman* with him on the brief) for plaintiff.

*A. G. M. Robertson* (*Robertson & Castle* on the brief) for defendant.