[No. 15606.  In Bank.—July 18, 1895.]

A. C. FREEMAN ET AL., RESPONDENTS, *v.* J. B.
BELLEGARDE ET AL., APPELLANTS.

108 179
h138 688

CONVEYANCE—DESCRIPTION — PHYSICAL BOUNDARY—CENTRAL POINT.—In
the absence of any qualifying term, the designation in a conveyance of
any physicial object or monument as a boundary implies the middle or
central point of such boundary.

ID.—CONSTRUCTION OF PRIVATE GRANT—DESIGNATION OF TIDAL STREAM
AS BOUNDARY—THREAD OF STREAM—PRESUMPTION.—A private grant
is to be interpreted in favor of the grantee; and, where the grantor in a
private conveyance is the owner of the bed of a tidal stream, which is
designated as a boundary of land granted or mortgaged, the conveyance
or mortgage will be held to extend to the middle line or thread of the
stream, and the general presumption is that the title of a purchaser or
mortgagee extends as far from the shore toward the thread of the
stream as the grantor owns, in both tidal and fresh waters.

ID.—MIDDLE LINE OF CREEK MUST PREVAIL OVER COURSES AND DISTANCES.
Where a creek is made the boundary of the land conveyed, and the calls
of the conveyance ascend the creek, the line ascending the creek fol-
lows the thread of the stream, and the courses and distances must yield
to the actual line of the creek.

ID.—LINE ASCENDING AND CROSSING CREEK—CROSSING FROM THREAD OF
STREAM.—A call for a line ascending a creek, and then crossing the
creek to the end of an old wall, is not inconsistent with holding that
the call ascending the creek follows the thread of the stream, and
the next course will be deemed to cross the creek from the thread of the
stream toward the end of the wall.

ID.—BOUNDARY BY SHORE OF STREAM—INTERSECTION OF DITCH WITH
   SHORE.—In the absence of any qualification a grant bounded by the
   shore of a river or stream, when the grantor is the owner thereof, con-
   veys the land up to the lowest point of the shore at any time; but it is
   competent for the grantor to so designate the line on the shore which
   shall constitute the boundary, that there shall be no uncertainty in its
   location, and, where the starting point of the description is the inter-
   section of a ditch with the shore line, the starting point is susceptible
   of exact location, and the term "shore" must be construed in the same
   meaning wherever used in the conveyance.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco and from an
order denying a new trial.   J. C. B. HEBBARD, Judge.

The facts are stated in the opinion.

*Warren Olney, Harding & Forbes, William Grant, C.
S. Cushing,* and *Charles F. Hanlon,* for Appellants.

The deed referring to the survey by N. Schofield, in-
corporated the survey into the deed, and it is part of
the deed. (*Hudson* v. *Irwin,* 50 Cal. 450.)   The de-
scription taken in connection with the Schofield survey
and the call for the crossing of the creek show an in-
tention to make the south bank of the creek a boundary
and not to make the line run down the center of the
creek; and the intention of the parties must prevail.
(*Dexter* v. *Riverside and Oswego Mills,* 15 N. Y. Supp.
374; 61 Hun, 619; *Kimball* v. *Semple,* 25 Cal. 449; *Mott*
v. *Mott,* 68 N. Y. 253; *People* v. *Jones,* 112 N. Y. 604;
*Severy* v. *Central Pac. R. R. Co.,* 51 Cal. 197; *Maynard*
v. *Weeks,* 41 Vt. 617; *Tyler* v. *Hammond,* 11 Pick. 193;
*Holloway* v. *Delano,* 18 N. Y. Supp. 704; 64 Hun, 34.)
Where the boundary is upon tide water the owner takes
only to high-water mark. (Civ. Code, sec. 830; Code
Civ. Proc., sec. 2077; 3 Washburn on Real Property,
5th ed., 440; *Ex parte Jennings,* 6 Cow. 518; 16 Am.
Dec. 447; *Chapman* v. *Kimball,* 9 Conn. 38; 21 Am.
Dec. 707; *Hagan* v. *Campbell,* 8 Porter, 9; 33 Am. Dec.
267.)   Islais creek, being a stream in which the tide

ebbs and flows, is navigable at common law. (*Ex parte Jennings,* 6 Cow. 518; 16 Am. Dec. 447; *McCullough* v. *Wall,* 4 Rich. 68; 53 Am. Dec. 715; *Rhodes* v. *Otis,* 33 Ala. 578; 73 Am. Dec. 439.) A lot bounded on a navigable river extends only to low-water mark. (*Child* v. *Starr,* 4 Hill, 369; *Dunlap* v. *Stetson,* 4 Mason, 349; *Hatch* v. *Dwight,* 17 Mass. 298; 9 Am. Dec. 145; *Howard* v. *Ingersoll,* 13 How. 381; *Alabama* v. *Georgia,* 23 How: 505; *Murphy* v. *Copeland,* 58 Iowa, 409; 43 Am. Rep. 118.)

*Freeman & Bates,* for Respondents.

The thread of the creek was the true boundary. (*Spring* v. *Hewston,* 52 Cal. 444.) The mortgagors under whom the title was taken owned the whole creek, and, when a private grantor owns both the bed and bank of the stream by which the grant is bounded, the purchaser's title extends to the thread of the stream, or as far into the stream as the grantor owns in both tidal and fresh waters. (Gould on Waters, secs. 194, 195; *Morrison* v. *Keen,* 3 Greenl. 474; *Berry* v. *Snyder,* 3 Bush, 283; 96 Am. Dec. 219; *Sleeper* v. *Laconia,* 60 N. H. 201; 49 Am. Rep. 311; *Lunt* v. *Holland,* 14 Mass. 150; *Williamsburg etc. Co.* v. *Smith,* 84 Ky. 375, 376; *Norcross* v. *Griffiths,* 65 Wis. 610, 615; 56 Am. Rep. 642; *Jones* v. *Soulard,* 24 How. 65; *Watson* v. *Peters,* 26 Mich. 508, 517; *Winslow* v. *Patten,* 34 Me. 25; *Lapish* v. *Bangor Bank,* 8 Greenl. 85, 92; *Doane* v. *Willcutt,* 5 Gray, 328; 66 Am. Dec. 369; *Boston* v. *Richardson,* 105 Mass. 351, 355–57; *Boston* v. *Richardson,* 13 Allen, 155; *Harlow* v. *Fisk,* 12 Cush. 302, 305.) The fact that the courses and distances mentioned in the deed run along the bank of the stream, or that a survey was made which does not include land under water, does not limit the effect of the deed as conveying the land under water owned by the grantor. (*Yates* v. *Van De Bogert,* 56 N. Y. 526, 531; *Brown Oil Co.* v. *Caldwell,* 35 W. Va. 95; 29 Am. St.

Rep. 793; *Luce* v. *Carley*, 24 Wend. 451; 35 Am. Dec. 637; *Rix* v. *Johnson*, 5 N. H. 520; 22 Am. Dec. 472; *Churchill* v. *Grundy*, 5 Dana, 100; *Bruce* v. *Taylor*, 2 J. J. Marsh. 160.) The effect of the deed is to be determined from its language, and cannot be varied by extrinsic evidence. (*Platt* v. *Jones*, 43 Cal. 219; *Bartlett* v. *Corliss*, 63 Me. 287, 290; *Fletcher* v. *Phelps*, 28 Vt. 262; *Proprietors* v. *Carlton*, 2 N. H. 369, 372; 9 Am. Dec. 88.) The plat of the preliminary survey of the Bernal rancho is not shown to be the survey referred to in the mortgage, and the fact that the survey shows meander lines drawn along and near the bank of the stream cannot have the effect to prevent the deed from extending to the thread of the stream. (*Railroad Co.* v. *Schurmeir*, 7 Wall. 272.) Meander lines run along streams by surveyors are never regarded as boundaries, and do not prevent the thread of the stream from being a boundary line. (*Hardin* v. *Jordan*, 140 U. S. 381; *Middleton* v. *Pritchard*, 3 Scam. 510; 38 Am. Dec. 112; *Minto* v. *De Laney*, 7 Or. 342; *Fuller* v. *Dauphin*, 124 Ill. 545; 7 Am. St. Rep. 388; *Kraut* v. *Crawford*, 18 Iowa, 549; 87 Am. Dec. 414; *Sphung* v. *Moore*, 120 Ind. 352; *Pere Marquette B. Co.* v. *Adams*, 44 Mich. 404; *Clute* v. *Fisher*, 65 Mich. 48; *Ladd* v. *Osborne*, 79 Iowa, 93; *Schurmeier* v. *St. Paul etc. R. R. Co.*, 10 Minn. 82; 88 Am. Dec. 59; *Jackson* v. *Camp*, 1 Cow. 612; *Rix* v. *Johnson, supra; Bruce* v. *Taylor, supra; Brown* v. *Huger*, 21 How. 320; *McCullock* v. *Aten*, 2 Ohio, 310; *French* v. *Bankhead*, 11 Gratt. 154; *Lynch* v. *Allen*, 4 Dev. & B. 62; 32 Am. Dec. 671; *Hurley* v. *Morgan*, 1 Dev. & B. 425; 28 Am. Dec. 582; *Klingensmith* v. *Ground*, 5 Watts, 459.) The fact that one or more of the calls mentioned in the deed extend to a monument on the bank or by the side of a stream does not indicate an intention on the part of the grantor to prevent the thread of the stream from being a boundary where the boundary is described as running with, along, or upon the stream. (*Lowell* v. *Robinson*, 16 Me. 357; 33 Am. Dec. 671; *St. Louis* v. *Rutz*, 138 U. S. 243; *County of St. Clair* v. *Lovingston*, 23 Wall. 46, 64;

*Hess* v. *Cheney*, 83 Ala. 251; *Seneca Nation* v. *Knight*, 23 N. Y. 498; *Luce* v. *Carley, supra;* Gould on Waters, sec. 197; *Sleeper* v. *Laconia, supra; Starr* v. *Child,* 20 Wend. 149.)   A conveyance bounded by the shore of a stream extends to the water line at all stages.   (*Child* v. *Starr,* 4 Hill, 375; *Stevens* v. *King,* 76 Me. 197; 49 Am. Rep. 609; *Halsey* v. *McCormick,* 13 N. Y. 296; *Yates* v. *Van De Bogert, supra; Lamb* v. *Rickets,* 11 Ohio, 311; *Murphy* v. *Copeland,* 58 Iowa, 409; 43 Am. Dec. 118.)

HARRISON, J.—Action to quiet title to certain lands in San Francisco.   The lands described in the complaint are a portion of the Bernal rancho, and the controverted question in the action is the title of the plaintiffs to that portion of the lands described in the complaint which lies between the south shore of Islais creek and the thread of the stream.   Islais creek empties into the bay of San Francisco, and the tidal waters of the bay ebb and flow in the creek for some distance above its mouth.   At the line of the land claimed by the plaintiff nearest the bay the creek is, at ordinary high tides, three hundred feet wide, and the ground at that point that is covered and uncovered by the ebb and flow of the tides has a width of one hundred and fifty feet between the bank of the stream and the line of ordinary low-water mark.   At high tide the water nearest the bay is about three feet deep, and at a point below the lands in controversy there is at low tide no water in the creek, thus rendering the creek a mere basin which is filled and emptied by the ebb and flow of the tide.   The patent for the Bernal ranch covers the bed of Islais creek and the land on both banks thereof, and includes all the lands described in the complaint.   The title of the plaintiffs to the land in controversy is derived through the foreclosure of a mortgage given by the Bernals to J. Mora Moss, and a subsequent conveyance from the grantees under the Moss foreclosure to John Hewston, and depends upon the construction to be given to the description in the mortgage and sheriff's deed there-

under and to the description in the conveyance from Moss' grantees to Hewston. The plaintiff had judgment in the court below, and defendants have appealed therefrom and from an order denying a new trial.

1. The description of the property in the mortgage to Moss, so far as the same affects the present action, is as follows: " . . . . Thence along margin of the bay (giving four courses and distances) . . . . 11 chains to mouth of creek; thence ascending said creek (giving thirteen courses, with their distances) . . . . N. 45°, W. 9 chains 50 links, crossing the creek to the end of the old wall on N. side of marsh . . . . containing area of 1,958 acres, more or less, according to a survey by N. Scholfield, deputy U. S. surveyor general." This description in the mortgage was carried into the sheriff's deed issued upon the sale under the foreclosure, and the title to the land thus conveyed afterward became vested in Pioche and Robinson.

In *Spring* v. *Hewston*, 52 Cal. 442, the description in this mortgage was before the court, and it was held that the creek, rather than the line determined by the courses and distances, was the true boundary of the land embraced in the mortgage. The call in the mortgage " to mouth of creek" rendered the thread of the creek the boundary of the land mortgaged. In the absence of any qualifying term the designation in a conveyance of any physical object or monument as a boundary implies the middle or central point of such boundary; as, for example, if the boundary be a road or highway, or a stream, the thread of the road or stream will be intended; if a rock, a heap of stones, or a tree be the boundary the central point of such tree or rock or heap of stones will be intended. A private grant is to be interpreted in favor of the grantee, and, if the grantor is the owner of the monument or boundary designated in his grant, his conveyance will be held to extend to the middle line or central point of such monument or boundary. This rule is not changed by reason of the fact that a stream which is designated as the boundary is a tidal stream,

if the grantor of the land is the owner of the bed of such stream. "When riparian estates are conveyed the owner may reserve the land under water, but the general presumption is that the purchaser's title extends as far as the grantor owns, in both tidal and fresh waters." (Gould on Waters, sec. 195.) The title to the beds of tidal streams is ordinarily vested in the sovereign, and in such case a grant from the sovereign which is bounded by tidal waters will be construed to extend only to high-water mark. (*Long Beach Land etc. Co.* v. *Richardson,* 70 Cal. 206.) A grant from the sovereign is to be interpreted in favor of the grantor, contrary to the rule for interpreting grants between private individuals; but if, as in the present case, the sovereign has parted with the title to the land beneath the stream, a grant of the riparian tidal lands by the owner must receive the same construction as a grant by him of any other riparian lands. It is unnecessary to determine whether the provisions of section 880 of the Civil Code, and of section 2077 of the Code of Civil Procedure, were intended to change the rules of construction then existing, inasmuch as the mortgage to Moss, and the conveyances by which the lands in question became vested in Pioche and Robinson, were executed prior to the enactment of the codes.

The further call in the mortgage and subsequent conveyances, "thence ascending said creek," must prevail over the courses and distances. The creek is the boundary of the land conveyed, and the courses and distances, being only approximate estimates of the direction and length of the boundary, must yield to the actual line of the creek. When a meandering stream is a boundary it is impracticable for a surveyor to fix monuments in the channel of the water, or to define the actual line of its windings and courses; and in attempting to define its banks it would be impossible for two surveyors to give the courses and lengths of its several meanders alike. (*Yates* v. *Van de Bogert,* 56 N. Y. 526; Angell on Watercourses, secs. 29, 30; *Middleton* v.

*Pritchard*, 3 Scam. 510; 38 Am. Dec. 112; *Railroad Co.* v. *Schurmeir*, 7 Wall. 272.)

This construction is not overcome by the fact that, after "ascending the creek" for several courses, the next course is given as "crossing the creek to the end of the old wall." This call is not inconsistent with holding that the previous call, "ascending the creek," follows the thread of the stream, but merely shows that in going from that point the next course is in a direction which crosses the creek from the thread of the stream toward the end of the wall. Nor is the construction to be given to these calls in the mortgage qualified by the subsequent reference therein to a survey by Scholfield. The defendants offered in evidence a plat of a survey made by Scholfield and approved by the United States surveyor general September 23, 1853, and it was testified that this was a preliminary survey of the Bernal rancho, made under instructions from the land commission. A comparison of this plat with the description in the mortgage shows, however, that this cannot have been the survey referred to in the mortgage. The plat is of the entire rancho, containing four thousand three hundred and forty-one acres, and has upon its face several subdivisions, no one of which corresponds with the tract of nineteen hundred and fifty-eight acres which is described in the mortgage. The plat, however, contains upwards of a hundred courses—more than double the number in the mortgage—and only eleven of these courses are the same as those in the mortgage.

2. Pioche and Robinson conveyed, December 6, 1866, to John Hewston a tract of land, "commencing at the intersection of a ditch (dividing land belonging to Haley and O'Neill) with the shore line, and running thence along said ditch . . . . to E. line of 15th avenue; thence along the easterly line of said 15th avenue N. 45° 15' W. 2 chains 60 links, to S. shore of Islais creek; thence along said shore as it winds and turns to commencement." Whatever title passed by this deed was vested in the plaintiffs at the commencement of the action. By vir-

tue of conveyances subsequently executed by Pioche and Robinson the defendants Luty and Thomas claimed title to the land, "commencing at a point where the northwesterly line of Fourth avenue intersects the southerly shore of Islais creek, and running thence in a northwesterly direction along the northeasterly line of said Fourth avenue extended, to the center of Islais creek, and thence ascending said Islais creek along the center line thereof to the northeasterly line of Fifteenth avenue, if extended in a northwesterly direction, as said avenue is delineated on said map; and thence in a southeasterly direction, and along the northeasterly line of Fifteenth avenue, if extended as aforesaid to the southerly shore of Islais creek; and thence in a northeasterly direction along said southerly shore as it winds and turns to the point of commencement." With reference to their title to this land the court finds, "That the lands described in the conveyance to Hewston include all the property described in plaintiffs' complaint, unless such deed is to be construed as including no part of the lands covered by the waters of Islais creek, in which event the said deed includes all the lands described in plaintiffs' complaint, except that lying in Islais creek"; and, "if Pioche and Robinson retained any title to any part of the lands described in plaintiffs' complaint, after the making of the conveyances hereinbefore set out, then such title thereafter and prior to the commencement of this action became vested in the defendants Thomas and Luty as to the lands described in their answer." The conclusion of law that " the plaintiffs are the owners of all the real property described in their complaint" must be regarded as a finding that Pioche and Robinson did not retain any title to any portion of the lands described in the complaint. The term " shore," in its ordinary use, signifies the land that is periodically covered and uncovered by the tide, but it is sometimes applied to a river or pond as synonymous with "bank". In the absence of any qualification a grant bounded by the " shore" of a river,

when the grantor is the owner of the river, conveys the land up to the lowest point of the shore at any time; in order that the grantee may at all times have access to the stream by which the land is bounded. It is competent, however, for the grantor to so designate the line on the shore which shall constitute the boundary, that there shall be no uncertainty in its location, and in such case the line of high or low water mark would be immaterial in determining the extent of the grant. In the present case the starting point of the description in the grant to Hewston is "the intersection of the ditch with the shore line." This starting point may be susceptible of exact location, and from some of the evidence offered at the trial it would appear capable of ascertainment, although the court does not find its location. The only land to which plaintiffs have title is that embraced within a line drawn from this starting point around the various courses to the "south shore of Islais creek," and "thence along said shore as it winds and turns to commencement." The point in the "south shore," from which the last course is to be drawn, must be the same point in the shore as is the starting point; that is, at whatever point between high and low water mark was the intersection of the ditch with the shore line, there must be the point in the "shore line" to which the course along the easterly line of Fifteenth avenue is to be extended. The term "shore" must be construed with the same meaning wherever it is used in the same conveyance, and its definite location in the first course requires the same location in the last. This is a fixed boundary or monument to which the distance "two chains sixty links," must yield. Whatever land lies between this boundary and the center of the creek is vested in the defendants Thomas and Luty, and the finding of the court that the plaintiffs were the owners of this portion of the demanded premises was erroneous.

3. The defendants other than Thomas and Luty claim title under Harvey S. Brown to certain lots in gift map

number four, upon the theory that the Moss mortgage did not include any part of the bed of Islais creek.  As Brown had conveyed to Moss all the lands described in the mortgage before he made the conveyance under which these defendants claim it is evident that the plaintiffs' title derived from Moss is superior to theirs.

The judgment and order denying a new trial are reversed as to the appellants Thomas and Luty.  As to the other appellants they are affirmed.

GAROUTTE, J., VAN FLEET, J., McFARLAND, J., and HENSHAW, J., concurred.