[Civ. No. 23356.   Second Dist., Div. One.   Apr. 24, 1959.]

SOUTHERN CALIFORNIA GAS COMPANY (a Corporation) et al., Respondents, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Appellant.

Harold W. Kennedy, County Counsel, Baldo M. Kristovich, Assistant County Counsel, Ivar E. Skjeie and Edward H. Gaylord, Deputies County Counsel, for Appellant.

T. J. Reynolds, L. T. Rice, Allen L. Cleveland and C. R. Salter for Respondents.

WHITE, P. J.—Southern California Gas Company and Southern Counties Gas Company of California, corporations, hereinafter referred to as the "Gas Companies," brought this action in inverse condemnation against the Los Angeles County

Flood Control District, a body corporate and politic, hereinafter referred to as the "District," to recover $6,660.98, the cost of relocating their 30-inch high pressure gas pipe in a 20-year right-of-way easement therefor granted to them by the Pacific Electric Railway, the owner of the fee simple title to the land since 1906. The District appeals from judgment for the Gas Companies.

August 25, 1953, the District entered into an agreement with the county of Los Angeles, in which it is recited that the issuance of its bonds "for the control of surface waters by the construction of storm drains and drainage channels has been authorized," and the county agreed "to proceed with the work of preparing final construction plans and specifications for the construction of those storm drain projects herein described . . .," including East Whittier Storm Drain Project Number 29, out of which the instant action arose, and to complete and deliver to the District said plans and specifications.

A portion of said county engineer's undated specifications describes said Project Number 29 as follows: "The work will extend in an easement, following the natural channel of La Canada Verde Creek, from a point approximately 90 feet southerly of Lambert Road to Second Street."

The District's specifications, its contract for construction, and the contractor's faithful performance bond refer to the project as "Construction of Storm Drain."

In 1954, the District advised the Gas Companies that the District planned to widen and deepen the ditch known as "East Whittier Storm Drain Project No. 29," and requested that their pipeline be relocated at their own expense "under the terms of its permit or franchise." The Gas Companies advised the District that the pipeline was within their own private easement. Then the District, by letter dated March 11, 1955, advised the Gas Companies that, although their pipeline is situated in a private easement, "it crosses a natural drain along which this project will be constructed," and that in the case of "natural drains such as this the public enjoys a natural easement which by its nature would predate any private easement," and that consequently the burden of relocating the pipeline was upon the owner of the private easement.

May 24, 1955, pursuant to authorization by the board of supervisors, an agreement for "Easement for Storm Drain" across said land belonging to the Pacific Electric Railway

Company was signed and acknowledged by the Railway and the District, "subject to all valid existing contracts, leases, liens, or encumbrances which may affect the property and the word 'grant' as used herein shall not be construed as a covenant against the existence of any thereof." The District, as consideration for said easement, promised to reimburse the Railway for any and all costs and expenses incurred in connection with changes required because of the construction of the said storm drain.

The Gas Companies' "Underground Pipe and Ditch Crossing" agreement with the Railway is dated August 31, 1946, and covers the agreed term of 20 years.

The District and the Gas Companies, under date of May 1, 1955, entered into a *status quo* agreement reciting that "the installation by the District of the Storm Drain . . . will necessarily conflict with an existing 30 inch pipeline . . .," and that a controversy exists between them as to which should bear the cost of relocation of said pipeline. Pursuant to said *status quo* agreement, the Gas Companies relocated their pipeline at a cost to them of $6,660.98.

It appears from the photographic exhibits, maps and drawings of the locale, and was found by the court, that Storm Drain Project Number 29 was designed and constructed to "carry off surface rain water run off from the northern slope of the Puente Hills." It was further found that said Project Number 29 is an artificial improvement of a natural watercourse; that, while the stream bed of La Canada Verde Creek is better defined north of Whittier Boulevard than in the vicinity of the Gas Companies' said pipeline, nevertheless, as shown by the United States Geological Survey Maps and other evidence including photographs showing railroad trestles over it and culverts and ditches along its course, the portion of the stream bed being considered on this appeal has long been existent; that although the pipeline of the Gas Companies was well below the ground when installed, the flow of waters in said creek so eroded said channel that before its relocation said pipeline was protruding "above the bed or flow line of La Canada Verde Creek"; and that it was necessary that said pipeline be relocated.

The District's justification of its refusal to pay the costs of the Gas Companies in moving their said pipeline is based primarily upon its claim that every owner of land (or of an easement over land) which is a part of, or immediately

adjacent to "a natural watercourse or drainway" owns it subject to "a natural right of the public to utilize such natural facility," to there construct "reasonable artificial improvements for the drainage" of domestic waters and from time to time to deepen and improve such channel for that purpose; and subject to the requirement that any improvements placed by such owner upon said land or easement must from time to time be altered at his own expense as required by public agencies "in aid of the drainage of domestic waters in the drainway"; that the obligation and duty on the part of such owners of land and easements has been enforced as "a part of the retained sovereign or police power of the public exercisable by jurisdictional bodies or agencies, of which appellant is one"; that the public always owned the right to the unrestricted drainway and to enlarge it when and if such enlargement is needed and all private ownership is subject to that right of the public.

That, if the state, of which appellant is the agent in the instant action, ever owned such an easement, it could not have been lost either by nonuser or by the agreement with the Railway for the "Easement for Storm Drain" hereinbefore described.

Therefore, the first issue to be considered on the instant appeal is the nature of appellant District's rights in the land belonging to Pacific Electric Railway Company and the easement granted by said Railway to the Gas Companies. Is such right, as stated in the grant of the "Easement for Storm Drain," subject to the Railway's prior valid and existing contract with the Gas Companies for "Underground Pipe and Ditch Crossing," or, is it, as urged by appellant, superior even to the rights of all riparian owners—including the Railway?

■■. "Generally speaking, the bed of navigable rivers and streams belongs to the state . . . If a stream or watercourse is not navigable, the bed is the private property of the riparian owners, and may not be taken for public use without compensation . . ." (25 Cal.Jur. 1046-1048; *Freeman* v. *Bellegarde*, 108 Cal. 179, 185 [41 P. 289, 49 Am.St.Rep. 76]; and *People* v. *Elk River M. & L. Co.*, 107 Cal. 221, 224 [40 P. 531, 48 Am.St.Rep. 125].)

Appellant, in its opening brief, cites the following decisions of the California courts as authority for its statement that "the rule is universal that lands located in or along a watercourse are subject to a natural easement or servitude to receive

all water naturally arising within the watershed or drainage area served and all of such waters may be directed into such watercourse by artificial means . . .''

In *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200], judgment for plaintiff for damage caused by the erosion of its property was reversed on appeal. A conduit constructed by the defendant in a natural wash carried water to a point over a mile above plaintiff's property and there returned said water to the wash which crossed plaintiff's land. At page 406, the court said: ''It is apparently contended on behalf of the plaintiff that even if the injury be *damnum absque injuria* as between private parties, yet when the injury is inflicted by an improvement made by public authority, it must be compensated for under the provision of our constitution (Art. I, § 14) that private property shall not be taken or damaged for a public use without just compensation. But the contrary has been directly decided since the filing of the original briefs in this case in *Gray* v. *Reclamation District,* 174 Cal. 622 [163 P. [1021] 1041].''

The *San Gabriel* case, *supra, Gray* v. *Reclamation District,* cited therein *supra, Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1], and *Bauer* v. *County of Ventura,* 45 Cal.2d 276 [289 P.2d 1], cited in appellant's opening brief, concern temporary flooding, or probable flooding, of lower lands riparian to a stream in which changes were made or planned by defendants for the purpose of flood prevention. They involve no taking or damaging of private property as part of the actual construction of public works. Not one of said above cited cases lends credence to appellant's claim that the Flood Control District has a ''natural easement'' along every natural drainway or ditch, which may be deepened, widened, cemented, covered, opened or changed at will, regardless of and without payment for damage to or destruction of any prior improvements over, across or near said drainway or ditch.

In the instant action, plaintiffs' 30-inch high pressure gas pipe had been installed in their own private easement below the bed of the natural drainway. Appellant District, for the improvement of said drainway, required plaintiffs to, and they did, permit defendant to build a cement conduit across the easement of respondent Gas Companies, wider and deeper than said drainway had been. In connection with the construction

of said conduit, said gas pipe was necessarily removed from its then position beneath the bed of said drainway and reconstructed across the top of said cement conduit and beneath the surface of the ground. Said relocation was done pursuant to defendant's demands in connection with its construction of said "East Whittier Storm Drain Project No. 29."

In the *Bauer* case, *supra*, where plaintiff sought to recover damages to her riparian property caused by defendant's changing of the height of its ditch on property above that of plaintiff, judgment of dismissal was reversed with directions. **[3-9]** At page 282, the court said: "California Constitution, article I, section 14, provides: 'Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner ...

"The taking of private property by the state for a public use is universally recognized as one of the indisputable attributes of sovereignty ... But the state must, except under special circumstances not here present, follow the constitutional procedure which requires the payment of compensation before the private owner is dispossessed of his property. When this requirement is not fully satisfied, an action will lie against the state to recover the value of the property so taken ...

"Section 14, however, is designed not to create new causes of action but only to give the private property owner a remedy he would not otherwise have against the state for the unlawful dispossession, destruction or damage of his property. The state is therefore not liable under this provision for property damage that is *damnum absque injuria*. If the property owner would have no cause of action against a private citizen on the same facts, he can have no claim for compensation against the state under section 14 ...

". . . Hence it is clear that the ordinary taking of private property for the purpose of constructing storm drainage systems is a taking for a public use. The reasons for such a taking are obviously to provide adequate normal drainage, to control flood waters and to provide irrigation waters. The public becomes principally entitled to the use and enjoyment of the private property taken for such purposes." (P. 284.)

". . . It follows that the taking or damaging of private property for the maintenance of an existing public improvement involving a deliberate act which has as its object the direct or indirect accomplishment of the purpose of the improvement as a whole constitutes a taking or damaging of

property for a public use and the owner of such property is entitled to compensation.

". . . Had the bank been raised during the original construction it would have been part of the over-all project and hence within the rule of *Clement* v. *State Reclamation Board, supra,* 35 Cal.2d 628, and *House* v. *Los Angeles County Flood Control Dist., supra,* 25 Cal.2d 384 . . ." (P. 285.)

The *House* and *Clement* cases, cited in the portion of the *Bauer* decision last above quoted, are both based upon the premise that "The construction of the public improvement is a deliberate action of the state or its agency in furtherance of public purposes. If private property is damaged thereby the state or its agency must compensate the owner therefor . . ." (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 641 [220 P.2d 897].)

■ We are satisfied that there is no "natural easement" across private property along a ditch or drainway in favor of a Flood Control District or other governmental agency for the purpose of constructing public works.

■ The Gas Companies having been required by appellant District to move and reconstruct their pipeline in and along their own private easement across said drainway, appellant District and not the Gas Companies should pay the cost of such removal. Appellant District, under the act by which it was created, has the power to require obedience to its demands in its exercise of its right of eminent domain. That power, however, does not relieve said District of its obligation to pay for all property taken or damages caused by its construction of public works.

None of the facts appearing in the record in the instant action require or warrant any exercise by the District of the police power of the state.

Having determined that appellant was not the owner of its claimed "natural easement," the rights claimed by it as incidental to such "natural easement" become immaterial.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 20, 1959, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1959.