[Civ. No. 12130. Third Dist. Jan. 8, 1970.]

FRED A. SHAEFFER, JR., et al., Plaintiffs and Appellants, v. STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Reginald M. Watt for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Lloyd Hinkelman, Hubert O. Bower and Dan G. Lubbock, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**REGAN, J.**—Plaintiffs brought this action in inverse condemnation against the state for water damage to real property suffered in 1967, allegedly resulting from acts of the state in connection with the Sacramento River Flood Control Project, dredger tailings, and the Oroville Dam. The trial court sustained the state's general demurrer without leave to amend. Plaintiffs appeal from the ensuing judgment of dismissal, contending the general demurrer should have been overruled.

The question presented is whether the complaint states a cause of action in inverse condemnation under article I, section 14 of the California Constitution.[1]

The allegations of the complaint are as follows:[2]

### "III

"For a long time prior to, and continuing until the time of the damages set forth herein, the Defendants, and each of them, (1) participated in the planning, designing, construction, maintenance and operation of a flood control project, including levees along the Feather River in Butte, Yuba and Sutter Counties, which flood control project is known as the Sacramento River Flood Control Project, (2) permitted dredging and leaving dredger tailings along the west bank of the Feather River in Butte County from the Western Canal to the southerly end of the tailings, and (3) planned, designed, constructed, maintained, and operating [sic] the Oroville Dam on the Feather River in Butte County, California.

### "IV

"During the months of January through April of 1967, waters of the Feather River were diverted from natural westerly drainage and were forced easterly onto Plaintiffs' property by the levees of the Sacramento River Flood Control Project and by the dredger tailings referred to in Paragraph III and the natural flow of such waters were [sic] materially altered in that the duration of the flow was substantially extended by the Oroville Dam.

---

[1]This section provides, in pertinent part, as follows: "Private property shall not be taken or damaged for public use without just compensation having first been made . . . ."

[2]The complaint sets out three causes of action for three seperate plaintiffs. The charging portions, however, are substantially the same.

## "V

"As a proximate result of the above described conduct of Defendants, Plaintiffs' properties were taken, destroyed or damaged by cutting, washing, erosion and other water damage which proximately caused an inverse condemnation of Plaintiffs' properties by Defendants."

The lands involved are apparently located between levees situated on the Feather River. The history and general features of the Sacramento River Flood Control Project have been given complete exposition in earlier decisions. (See cases cited in *Beckley* v. *Reclamation Board* (1962) 205 Cal. App.2d 734, 739 [23 Cal.Rptr. 428].) The Oroville Dam, of course, is of more recent vintage. Cases involving inverse condemnation through spillage or flooding of waters from natural stream courses allegedly caused by public improvements, however, have had a long history in this state. (See, e.g., *Gray* v. *Reclamation Dist. No. 1500* (1917) 174 Cal. 622 [163 P. 1024]; *Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19 [119 P.2d 1]; *House* v. *Los Angeles County Flood Control Dist.* (1944) 25 Cal.2d 384 [153 P.2d 950]; *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628 [220 P.2d 897]; *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 [289 P.2d 1]; cf. *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129]; *Sutfin* v. *State of California* (1968) 261 Cal. App.2d 50 [67 Cal.Rptr. 665]; in general, see Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hast.L.J. 431, 448-465.)

This court in *Beckley* v. *Reclamation Board, supra,* 205 Cal.App.2d at page 743, states the rule to be as follows: "Nothing in the law of waters is better settled than the rule that any diversion of water from, or change in the course of flow in, a natural watercourse, attended by damage to private lands makes the actor liable under the maxim: *Sic utere tuo, ut alienum non laedas,*[3] and, as applied to public agencies, under the constitutional right to just compensation for a public taking or damaging. (*Bauer* v. *County of Ventura,* 45 Cal.2d 276 [289 P.2d 1]; *Southern Cal. Gas Co.* v. *Los Angeles County Flood Control Dist.,* 169 Cal.App.2d 840 [338 P.2d 29]; *Ward Concrete Products Co.* v. *Los Angeles County Flood Control Dist.,* 149 Cal.App.2d 840 [309 P.2d 546]; *Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562 [153 P.2d 69].) This rule has been extended in *Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 638 [220 P.2d 897], to state interference with a channel artificially leveed by private individuals where substantial sums had been expended thereon and the system of private works had existed for 62 years."[4]

---

[3] So use your own property as not to injure that of another.

[4] In addition to the cases cited, see: *Youngblood* v. *Los Angeles County Flood Control Dist.* (1961) 56 Cal.2d 603 [15 Cal.Rptr. 904, 364 P.2d 840]; *Sutfin* v. *State of California* (1968) *supra,* 261 Cal.App.2d 50; *Frustuck* v. *City of Fairfax*

Also in *Beckley, supra,* this court states (at pp. 747-748): "[T]he rule is settled that where the state either creates or increases a servitude over lands for the public benefit, it must, unless it acts properly within the limits of its police power, pay compensation. . . .

". . . . . . . . . . . . . . . . . . .

"Even if plaintiffs' lands here had been already subject to overflow before the acts of respondents . . . and could be thereby said to be subject to a natural burden of overflow, respondents could not increase the burden without paying compensation."[5]

In their complaint plaintiffs allege (1) injury to property caused by (2) diversion of stream waters which was in turn caused by (3) the levees of the Sacramento River Flood Control Project and the Oroville Dam (public improvements). From this it would appear that plaintiffs have set forth a prima facie cause of action in inverse condemnation. (See, Van Alstyne, *op. cit. supra,* at pp. 457-462.) However, as noted in *Sutfin, supra,* and as we note here, the charging portions of the complaint state nothing but conclusions. As we stated in *Sutfin, supra,* 261 Cal.App.2d at page 57: "We cannot ascertain from the pleading whether this physical damage allegedly caused by the government activity was deliberately calculated (release of water under emergency conditions), faulty planning, design or construction, a product of negligence (employee or otherwise), or the result of other circumstances not pleaded."

We think the same objections are applicable here. The complaint alleges a one-time damage by overflow in 1967, then jumps to the unsupported legal conclusion that this overflow "proximately caused an inverse condemnation . . . ." The complaint further alleges $32,000 damages to the land from this one-time flooding. As pointed out in the *Beckley* case, *supra,* 205 Cal.App.2d at pages 747-749, inverse condemnation may involve the creation of a servitude over lands for the public benefit. A one-time flooding is not the equivalent of a flowage easement. It does not follow, however, that plaintiffs could not amend their complaint to state a proper cause of action in inverse condemnation, and the trial court erred in denying them an opportunity to do so. Further, the complaint alleges that the state permitted dredging and left dredger tailings also causing a diversion of the waters of the Feather River. It is not shown, however, whether, or in what way, it is contended dredging opera-

---

(1963) 212 Cal.App.2d 345 [28 Cal.Rptr. 357]; cf. *Hayashi* v. *Alameda County Flood Control Dist.* (1959) 167 Cal.App.2d 584, 591-592 [334 P.2d 1048].

[5]For another exposition of the applicable rules, see this court's decision in *Sutfin* v. *State of California, supra,* 261 Cal.App.2d 50; see also, Van Alstyne, *op. cit. supra,* at p. 458.

tions were associated with a public improvement. Thus, while we find the complaint was defective, it was not fatally defective. We can find no support in the record for the trial court's denial of plaintiffs' leave to amend their complaint.

In urging an affirmance of the judgment the state initially notes that a portion of the property is located on the land-side of the east levee of the Feather River and that there is no allegation that the stream over-topped on this property. The state then asks this court to take judicial notice, as did the trial court (see Evid. Code, § 459), of the fact that in 1967 the waters of the Feather River did not escape the levee confines. Plaintiffs counter that there is a misdescription of real property and thus they should be afforded the opportunity to show by amendment that the affected property is on the riverward side of the levee.

The state next contends that with respect to all of the lands located between the levees of the Feather River, such lands are impressed with a navigational servitude in favor of the state. Thus, it reasons, damage—if any—caused by the flood control project is noncompensable. The state relies on *Colberg, Inc.* v. *State of California* ex rel. *Dept. Public Works* (1967) 67 Cal.2d 408 [62 Cal.Rptr. 401, 432 P.2d 3]. That case, however, was concerned with the power of the state over its navigable waters, the public right in navigation, and the trust in which the state holds and administers its navigable waterways and the lands lying beneath them. The controversy centered around a state-proposed freeway bridge across a channel which would impair access to the channel to ocean-going vessels, thereby damaging plaintiffs' shipyards. Moreover, in *Colberg, supra,* no physical taking or interference was involved, but only interference with an easement of navigation, whereas in the case at bench the complaint alleges a diversion of stream waters causing physical damage to real property.

The state contends that the levees of the Sacramento River Flood Control Project along the Feather River are themselves natural stream banks and thus do not divert water from natural drainage. It asks that this court take judicial notice (see Evid. Code, §§ 451, subd. (f) and 452, subds. (g) and (h)) that the levees of the Sacramento River Flood Control Project along the Feather River have been in existence for many years prior to 1967, that such levees were intended to be permanent, and that a community of land owners has been allowed to adjust itself to their existence. But even if this court did so, it is uncertain as to how this would avail defendant state for the complaint states that "the natural flow of such waters were materially altered *in that the duration of the flow was substantially extended . . . .*" (Italics added.)

■ Also; in contending that the levees have acquired all the attributes of natural stream banks, the state requests this court to judicially notice the Califor07a Debris Commission Report, known as the "Jackson Report," House Document 81, 62d Congress, First Session, June 27, 1911, and the state and federal legislation adopting such report. The Jackson Report is discussed in *Beckley* v. *Reclamation Board, supra,* 205 Cal.App.2d at pp. 740-741, and we believe the point raised by the state is answered therein (at pp. 741-742): "It is, of course, true that the courts take judicial notice of all matters of science and common knowledge . . . and of the reports of the California Debris Commission referred to above . . . ; that is to say, we take judicial notice of the fact that the reports were made, and of their contents. We do not, however, take judicial notice that everything said therein is true. [Citations.]"

The state's position with respect to the dredger tailings is that it is not liable in 1967 for any water which may have been caused to be on the land of plaintiffs. As we noted before, however, the portions of the complaint relating to dredging are vague and ambiguous and therefore defective. We do not reach the question whether plaintiffs' pleading is aided by the additional allegation that the state "permitted dredging and leaving dredger tailings along the west bank of the Feather River in Butte County from the Western Canal to the southerly end of the tailings," nor could we do so in view of the vague and conclusionary manner in which the charge is made.[6]

The state finally notes that there is no allegation that the flow *over plaintiffs' properties* was extended. This again, however, is a matter that could be corrected by an amendment.

■ The function of an appellate court in a pleading case of this type is set forth in *Lloyd* v. *California Pictures Corp.* (1955) 136 Cal.App.2d 638, 642 [289 P.2d 295]: "As hereinbefore indicated, the merits of plaintiff's complaint, and likewise the merits of any defense offered by the defendants, are matters in no manner involved in the present appeal. According to the long established rule, as stated in *Roberts* v. *Wachter,* 104 Cal.App.2d 281 [231 P.2d 540], and elsewhere, 'On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must be regarded as true. . . . All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief.' The reviewing court in such an appeal 'is confined to the allegations of the complaint,' and as said in *San Juan Gold Co.* v. *San Juan Ridge Mut.*

---

[6]This matter was the subject of supplemental briefing and included matters outside the record more appropriate for a hearing by the trier of fact.

*Water Assn.,* 34 Cal.App.2d 159, 174 [93 P.2d 582]; 'the evidence plays no part in determining the corectness [*sic*] of a ruling on a demurrer.' "

 Whether plaintiffs will be able to prove the allegations made is entirely immaterial on the present appeal, since against a demurrer the allegations of the complaint must be taken as true. (*Lloyd* v. *California Pictures Corp., supra,* 136 Cal.App.2d at p. 643.)

The judgment is reversed and the cause remanded to the trial court with directions to vacate its former order on demurrer and to permit plaintiffs to amend.

Friedman, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied February 3, 1970, and respondent's petition for a hearing by the Supreme Court was denied March 4, 1970. McComb, J., was of the opinion that the petition should be granted.