[No. B068585. Second Dist., Div. Three. June 22, 1993.]

1119 DELAWARE, Plaintiff and Appellant, v.
CONTINENTAL LAND TITLE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Guy Sanders for Plaintiff and Appellant.

Larr & Poteet and William R. Larr for Defendants and Respondents.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant 1119 Delaware, a California general partnership (Delaware), appeals an order of dismissal following the sustaining of a demurrer to its original complaint without leave to amend.[1] The demurrer was interposed by defendants and respondents Continental Land Title Company (Continental) and Lawyers Title Insurance Corporation (Lawyers Title).

The essential issue presented is whether Continental is liable in negligence for omitting from an abstract of title the existence of a conditional use permit (CUP) which had been recorded against the subject real property. We also examine whether there was coverage under the title policy issued by Lawyers Title to Delaware.

We conclude Continental had a duty to report the CUP in the abstract of title because the recordation imparted constructive notice of what amounts to an encumbrance on title. Further, the CUP came within the affirmative insuring clauses of the Lawyers Title policy and was not excluded from coverage. Therefore, the order is reversed in part and affirmed in part.

### FACTUAL AND PROCEDURAL BACKGROUND

a. *The complaint against Continental and Lawyers Title.*[2]

In September 1988, contemplating an acquisition of an 11-unit apartment building in San Diego, Delaware contracted with Continental for an abstract of title regarding the property. Continental prepared the abstract but failed to report a recorded CUP which restricted the use and alienation of the property.

Specifically, the CUP required a minimum of one occupant of each dwelling unit to be at least 62-years old or physically handicapped. The CUP affected solely the subject property and was the product of a bargained-for exchange between the City of San Diego and a previous owner of the

---

[1] A written order of dismissal signed by the trial court and filed in the action constitutes a judgment and is effective for all purposes. (Code Civ. Proc., § 581d.)

[2] The title insurance policy was appended as an exhibit to the complaint.

In addition, the trial court had before it the CUP and portions of the San Diego Municipal Code. Such relevant matters which are properly the subject of judicial notice (Evid. Code, § 452) may be treated as having been pled. (*Helix Land Co.* v. *City of San Diego* (1978) 82 Cal.App.3d 932, 937 [147 Cal.Rptr. 683]; *Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].)

property who had obtained permission under the CUP to construct, use and maintain a senior citizen housing development on the site.

Delaware relied on the Continental abstract in proceeding with the purchase and would not have purchased the property had it known of the CUP.

In November 1988, Lawyers Title issued to Delaware a title insurance policy (the policy). The policy did not except from coverage, or disclose, the CUP.

Due to the restrictions in the CUP, Delaware was unable to rent or sell the property at market rates and the value of the property was diminished by about $200,000. Lawyers Title rejected Delaware's claim under the policy.

Based on the above allegations, Delaware pled causes of action against Continental for (1) negligence/abstracter liability, and against Lawyers Title for (2) breach of insurance contract and (3) breach of the implied covenant of good faith and fair dealing.

b. *The demurrer and ruling thereon.*

Continental and Lawyers Title demurred to all three causes of action. They contended before the trial court: there was no duty to include the recorded CUP within the abstract of title; there was no coverage under the policy because the affirmative insuring clauses did not insure against the existence or effect of a recorded CUP; and, restrictions arising from local laws, ordinances, or governmental regulations, including building and zoning matters, were expressly excluded from coverage.

Following a hearing, the trial court sustained the demurrer to the original complaint without leave to amend and dismissed the action. This appeal followed.

## CONTENTIONS

Delaware contends: (1) Continental should have disclosed the CUP in the abstract of title because the CUP was within the chain of title and imparted constructive notice; (2) the recorded CUP was covered under the insuring provisions of the Lawyers Title policy; and (3) the recorded CUP did not fall within the exclusionary portion of the policy.

## DISCUSSION

1. *Standard of appellate review.*

█ The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Buford* v. *State of California* (1980) 104

Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The allegations are regarded as true and are liberally construed with a view to attaining substantial justice. (*Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347]; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)

Generally, when a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. If it can, the trial court abused its discretion and we reverse; if not, there was no abuse of discretion and we affirm. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

However, where, as here, a demurrer is sustained to the *original* complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment. (*King* v. *Mortimer* (1948) 83 Cal.App.2d 153, 158 [188 P.2d 502].)

2. *Delaware stated a cause of action against Continental for negligent preparation of the abstract of title.*

 Delaware contends the CUP should have been reported in the abstract of title because Government Code section 27281.5 (section 27281.5) required the recording of the CUP and makes the effect of such recording constructive notice.

Continental argues section 27281.5 is inapplicable.

a. *Section 27281.5 both required recordation of the CUP and makes the effect of such recording constructive notice.*

In examining whether the abstract of title should have disclosed the CUP, we begin with Insurance Code section 12340.10. That section defines abstract of title as "a written representation, provided pursuant to a contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of such representation, listing all recorded conveyances, instruments or documents which, under the laws of this state, *impart constructive notice with respect to the chain of title* to the real property described therein. An abstract of title is not a title policy as defined in Section 12340.2." (Ins. Code, § 12340.10, italics added.)

Not all recorded documents impart constructive notice. " '[T]he mere fact that an instrument has been recorded does not give constructive

notice thereof unless there is some statute authorizing or permitting such instrument to be placed of record and at the same time making the effect of such recording constructive notice.' [Citation.]" (*Stearns* v. *Title Ins. & Trust Co.* (1971) 18 Cal.App.3d 162, 169 [95 Cal.Rptr. 682].)

 Delaware contends the instant recorded document, the CUP, imparted constructive notice because section 27281.5 required the recording of the CUP and makes the effect of such recording constructive notice.

Section 27281.5 provides that a restriction imposed by a governmental entity on the ability of an owner to convey real property must be recorded to provide constructive notice, and that such recording is a condition to the validity of the restriction. (*City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1194 [278 Cal.Rptr. 375, 805 P.2d 329].)[3]

Here, the occupancy requirements in the CUP, which was to run with the land to bind any successors, amounted to a restriction on the owner's ability to convey the property within the meaning of section 27281.5. Because the CUP diminished the bundle of rights that could be conveyed by the owner, it constituted an *encumbrance* on title "limiting the right of the owner of [the] land to freely use it in any lawful way." (*Fraser* v. *Bentel* (1911) 161 Cal. 390, 394 [119 P.509].)[4] Accordingly, the CUP impaired the owner's ability to convey a full fee to the property.

---

[3]Section 27281.5 states: "(a) Any restriction imposed upon real property on or after January 1, 1982, *which restricts either the ability of the owner of real property to convey the real property* or the owner of a proprietary leasehold interest to convey such interest and which is imposed by a municipal or governmental entity on real property or a proprietary leasehold interest which is not owned by the municipal or governmental entity, shall be specifically set forth in a recorded document which particularly describes the real property restricted *in order to impart constructive notice of the restriction*, or shall be referenced in a recorded document which particularly describes the real property restricted and which refers by page and book number to a separately recorded document in which the restriction is set forth in full. [¶] (b) Any restriction on the ability of a person to convey real property which is subject to subdivision (a) shall be valid and enforceable only when the requirements contained in subdivision (a) have been met. [¶] (c) Nothing in this section shall be construed, either directly or by implication, to enhance, diminish, or authorize any municipal or governmental entity to impose a restriction on the ability of a person to convey real property or a proprietary leasehold interest." (Italics added.)

[4]The term encumbrance is defined as any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. (*Fraser, supra*, 161 Cal. at p. 394; accord *Evans* v. *Faught* (1965) 231 Cal.App.2d 698, 706.) Although Civil Code section 1114 provides the term encumbrance "*includes* taxes, assessments, and all liens upon real property" (italics added), the word " 'includes' " is one of enlargement rather than limitation (*Fraser, supra*, at p. 394; *Evans, supra*, at p. 706). Therefore the language of Civil Code section 1114 does not limit encumbrances to those specifically mentioned therein. (*Evans, supra*, at p. 706.)

Consequently, section 27281.5 required the CUP to be recorded. Further, the statute made the effect of such recordation constructive notice of this governmentally imposed restriction. ██ ██ Assuming the CUP was within the chain of title,[5] Continental should have included the CUP in the abstract of title as an encumbrance on title. (Ins. Code, § 12340.10.)

 b. *No merit to Continental's arguments that section 27281.5 is inapplicable.*

Continental offers several unpersuasive arguments as to why section 27281.5 is inapplicable.

It contends the CUP does not expressly impose any restrictions upon the process of selling or leasing; the CUP, at paragraph 16, merely requires one occupant of each dwelling unit to be at least 62 years of age or physically handicapped.

This argument lacks merit because paragraph 16 of the CUP unquestionably "restricts . . . the ability of the owner . . . to convey the real property[.]" (§ 27281.5.) Even though the CUP does not expressly dictate the choice of potential *lessees*, because the CUP requires a minimum of one *occupant* of each unit to be at least 62 years of age or physically handicapped, the CUP is an encumbrance limiting the use of the property and thereby restricting the owner's ability to convey a full fee.

Continental further contends section 27281.5 is inapplicable because it only applies to proprietary leases in cooperative apartment buildings,[6] not to leases of ordinary individual apartments in an ordinary apartment building.

This argument likewise is devoid of merit. As indicated, section 27281.5 applies to "[a]ny restriction imposed upon real property . . . which restricts *either* the ability of the owner of real property to convey the real property *or* the owner of a proprietary leasehold interest to convey such interest . . . ." (§ 27281.5, italics added.) Because section 27281.5 applies both to restrictions on an owner's ability to convey real property and to restrictions on an

---

[5]Continental does not contend the CUP was recorded outside the chain of title. We note that a "wild" document, the existence of which could not be found by a search of grantor/grantee indices, does not impart constructive notice. (*Far West Savings & Loan Assn.* v. *McLaughlin* (1988) 201 Cal.App.3d 67, 73 [246 Cal.Rptr. 872]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 204, p. 408.)

[6]Black's Law Dictionary (5th ed. 1979) at page 1098, column 1, defines "proprietary lease" as "Type of lease in cooperative apartment between owner-cooperative and tenant-stockholder."

owner's ability to convey a proprietary leasehold interest, Continental's strained reading of section 27281.5 as applying only to proprietary leases flies in the face of the statute.

Lastly, Continental cites *City of West Hollywood* v. *Beverly Towers, Inc.,* *supra,* 52 Cal.3d 1184, for the proposition that section 27281.5 only applies to transfers of the property *in its entirety,* as opposed to transfers of any of the individual dwelling units. It contends because the instant CUP does not restrict sale or lease of the entire underlying real property in any way, the statute is inapplicable.

Continental's analysis of *City of West Hollywood,* which is the sole published opinion involving section 27281.5, does not withstand scrutiny.

There, a newly incorporated city adopted an ordinance, Ordinance No. 114U, amending a zoning ordinance by adding comprehensive regulations governing the conversion of multiple family rental units into condominiums. (*City of West Hollywood, supra,* 52 Cal.3d at p. 1187.) The owners of various apartment buildings who desired to engage in condominium conversions contended section 27281.5 required the city to record Ordinance No. 114U against their title as a restriction on their right to convey, and because the city did not properly record the ordinance, it was unenforceable against them. (*City of West Hollywood, supra,* 52 Cal.3d at p. 1194.)

The Supreme Court found section 27281.5 was inapplicable on its face to Ordinance No. 114U because the ordinance did "not purport to limit defendants' right to *convey* their entire buildings, only their right to *convert* individual units for use as condominiums . . . ." (*City of West Hollywood, supra,* 52 Cal.3d at p. 1194, italics added.) In other words, the court held section 27281.5 did not require recordation of an ordinance regulating condominium conversions because the ordinance did not limit the owners' right to convey their buildings, and only regulated their right to engage in condominium conversions of their units. Consequently, there is no merit to Continental's contention *City of West Hollywood* construed section 27281.5 as applying only to transfers of an entire property, as opposed to transfers of individual dwelling units within a property.

In sum, there is no merit to any of Continental's challenges to the applicability of section 27281.5 to this fact situation.

 c. *No merit to Continental's contention CUP was a zoning restriction rather than an encumbrance affecting title.*

■ Continental emphasizes the issuance of the instant CUP was authorized by the San Diego Municipal Code in the chapter dealing with zoning. It

contends there was no duty to discover or report the CUP because restrictions on land use resulting from government laws, ordinances or regulations do not constitute encumbrances on title.

The argument is unsound because the instant CUP extended solely to the subject property and was not a law of general applicability.

There is a presumption that each person knows the governing law, and therefore courts have presumed knowledge of a zoning ordinance. (*City of West Hollywood, supra*, 52 Cal.3d at p. 1194.) Thus, an ordinance of *general* application, such as an ordinance regulating condominium conversions, imparts constructive notice of its terms to the public. (*Ibid.*) Further, if such ordinances were required to be recorded as a restriction on the owners' title in order to be enforceable, local governments would be required to record all zoning ordinances of citywide or countywide applicability. (*Id.*, at p. 1195.) This would impose an unreasonable burden on the zoning power of local governments. (*Ibid.*)

Consequently, a buyer is properly charged with knowledge of zoning ordinances of general application under the principle that persons are presumed to know the law. However, a CUP is *not* a law of general application. Instead, it represents a bargain between a public entity and a permittee with respect to particular real property. In exchange for the development and land use privileges extended under a CUP, the permittee agrees to abide by specified conditions required by the public entity. (See San Diego Mun. Code, § 101.0510.)

In view of the fact a CUP is not a law of general application which is readily ascertainable, a prospective buyer is entitled to resort to an abstract of title to learn of the existence of a CUP which has been recorded against a property. Continental's attempt to equate the instant CUP with a law of general application, such as an ordinance or land use regulation, is unavailing.

d. *Conclusion.*

■ Because the CUP was a governmentally imposed encumbrance on title, section 27281.5 is applicable. Consequently, recordation of the CUP was mandatory and the recordation imparted constructive notice. Therefore, Continental had a duty to report the CUP in the abstract of title.[7]

---

[7]We have taken judicial notice of various legislative material pertaining to section 27281.5. (Evid. Code, §§ 452, 459.) These materials disclose the title insurance industry favored the

3. *Delaware stated a cause of action against Lawyers Title for breach of insurance contract.*

a. *The CUP came within the affirmative insuring clauses of the title policy.*

█ Coverage is determined in the first instance by reference to the insuring clauses. (*Glavinich* v. *Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 270 [209 Cal.Rptr. 266].)

The policy states in relevant part that coverage is being provided against loss or damage sustained by reason of: "1. Title to the estate or interest described in Schedule A being vested other than as stated therein; [¶] 2. Any defect in or lien or *encumbrance* on such title; . . ." (Italics added.)

Schedule A did not list the CUP and instead, simply stated the estate or interest vested in Delaware was a fee.

As discussed *ante*, the CUP constitutes an encumbrance on title because it "limit[ed] the right of the owner of [the] land to freely use it in any lawful way." (*Fraser, supra*, 161 Cal. at p. 394.) Because the CUP is an encumbrance on title, it comes within the affirmative insuring clauses of the policy.

b. *The CUP was not expressly excluded from coverage.*

Lawyers Title contends even assuming the recorded CUP fell within the affirmative insuring clauses, it did not constitute a covered matter because it was specifically excluded from coverage under another part of the policy.

The exclusion upon which Lawyers Title relies, paragraph 7 of schedule B, part I, states: "*Any law, ordinance or governmental regulation* (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction

---

adoption of the statute. In a letter dated September 11, 1981, the California Land Title Association requested the Governor to sign the bill, Assembly Bill No. 663, into law, to "enable persons dealing with real property to be apprised of the fact of any restrictions on the owner's ability to convey the real property which have been imposed by a municipality. This will be accomplished by requiring such restrictions to be recorded in a manner which will impart constructive notice." The letter further stated: "The bill seeks to fill a void in existing law which will serve to protect persons dealing with restricted real property from becoming involved in disputes based on restrictions of which they had no knowledge and could not have discovered."

in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation." (Italics added.)

As discussed *ante*, the CUP is not a law, ordinance or governmental regulation. The mere fact the San Diego Municipal Code authorizes the issuance of CUP's does not transform the instant CUP into a zoning ordinance. Accordingly, this exclusion is unavailing to Lawyers Title.

Therefore, Delaware has stated a cause of action for breach of insurance contract.

4. *Delaware has waived its bad-faith claim.*

■ Although seeking a reversal as to all causes of action, Delaware presented no argument in its opening brief with respect to its third cause of action for breach of the implied covenant of good faith and fair dealing. Ordinarily, an appellant's failure to raise an issue in the opening brief waives the issue on appeal. (*Tisher* v. *California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 [282 Cal.Rptr.330].)

Delaware makes a passing reference to the bad-faith claim in its reply brief, merely stating the bad-faith claim stands or falls with the coverage issue.

Given Delaware's failure, both in its opening and reply briefs, to furnish a legal argument with citation of authorities to support its contention that its bad-faith allegations are well pled, the point is waived. (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12].)

DISPOSITION

The order is reversed as to the first two causes of action, and is affirmed as to the third cause of action.

Delaware to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 23, 1993.