[No. B077418. Second Dist., Div. Four. Nov. 1, 1995.]

3250 WILSHIRE BOULEVARD BUILDING, Plaintiff and Appellant, v. EMPLOYERS INSURANCE OF WAUSAU et al., Defendants and Respondents.

1278

---

## COUNSEL

Raiskin & Revitz and Steven J. Revitz for Plaintiff and Appellant.

Daniels, Baratta & Fine, Mark R. Israel and Michelle R. Press for Defendants and Respondents.

## Opinion

**KLEIN (Brett), J.\***—Plaintiff the 3250 Wilshire Boulevard Building, a limited partnership, appeals from an order of dismissal, entered June 23, 1993, after a demurrer was sustained, without leave to amend, to the claims pleaded in its first amended complaint against respondents Employers Insurance of Wausau and Wausau Underwriters Insurance Company. (A co-plaintiff, Housing Affiliates, Inc., pleaded unrelated claims and is not a party to this appeal.) We affirm.

The facts stated in this opinion are based entirely on the allegations of plaintiff's first amended complaint, supplemented by pleadings filed in an underlying action, of which judicial notice can properly be taken. Plaintiff owned an office building on Wilshire Boulevard in Los Angeles. Attorney Garo Mardirossian was a tenant in the building. In the underlying action, plaintiff sued Mardirossian for breaches of the lease, including failure to pay $27,000 in rent. Mardirossian counterclaimed for damages for breach of the lease, alleging plaintiff had conspired with a more highly prized tenant to try to relocate Mardirossian to less desirable quarters in the building. Mardirossian's answer contained similar allegations as defenses.

Plaintiff was an additional named insured under a business liability policy issued by defendants. Plaintiff tendered the defense of Mardirossian's counterclaim. Defendants accepted the tender, and eventually settled Mardirossian's counterclaim by paying him $50,000. Plaintiff demanded that defendants, as a condition of the settlement, "obtain a release of Mardirossian's Affirmative Defenses." Defendants refused to do so.

Plaintiff then demanded that defendants provide it with "a defense to" Mardirossian's defenses. Defendants refused. Plaintiff prosecuted its claims against Mardirossian to a successful conclusion, incurring $59,000 in legal fees in the prosecution of those claims after the counterclaim was settled. The lease contained a legal fees provision, and plaintiff obtained a costs award against Mardirossian for legal fees, in an amount plaintiff considered unsatisfactory.

██ Plaintiff alleged defendants' refusal to "defend it" against Mardirossian's defenses was a breach of the insurance contract and of the implied covenant of good faith and fair dealing.

*Judge of the Municipal Court for the Los Angeles Judicial District, sitting under assignment by the Chairperson of the Judicial Council.

The basis of defendants' demurrer was that the liability policy did not obligate them to furnish legal services for plaintiff's prosecution of its action against Mardirossian, because Mardirossian's defenses pleaded in that action had no potential to result in a judgment holding plaintiff liable to pay damages to Mardirossian. The trial court agreed, sustained the demurrer without leave to amend, and dismissed plaintiff's action. This appeal followed.

The trial court's ruling was correct. In the liability policy (which was incorporated in the complaint) defendants agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . or 'personal injury' or 'advertising injury' . . . We will have the . . . duty to defend any 'suit' seeking those damages." This provision did not obligate defendants to prosecute plaintiff's claims against Mardirossian, because neither the prosecution of plaintiff's prima facie case nor the defeat of Mardirossian's defenses thereto could be considered the defense of a suit seeking damages.

Plaintiff forthrightly concedes that there are no California cases on point. It relies on *American Home Assur. Co.* v. *Miller* (9th Cir. 1983) 717 F.2d 1310. In that case, a client brought a legal malpractice action, and the attorney's carrier handled the defense, winning a dismissal on limitations grounds. The attorney then sued the client for unpaid fees in unrelated matters, and the client's answer prayed for a monetary offset for damages suffered from the malpractice alleged in the first suit. When the attorney's malpractice carrier declined his request that it handle the offset claim, coverage and bad faith litigation ensued in the federal court in Arizona. A divided Court of Appeals reversed an order granting summary judgment to the malpractice carrier, ruling that the offset claim was in substance and effect a claim for damages for legal malpractice.

*Miller*, nonbinding because decided under Arizona law, is also distinguishable on two grounds. First, the transactions which formed the basis of the offset claim against Miller were unrelated to the transactions on which the insured was suing. Second, though the offset claims against Miller could not be the subject of affirmative relief because barred by the statute of limitations, they remained legally viable defenses, whereas here the offset claims were liquidated, paid, and extinguished by the settlement. We decline to stretch the ruling in *Miller* to fit the facts of this case.

The order of dismissal is affirmed. Costs to respondents.

Epstein, Acting P. J., and Hastings, J., concurred.